A03A2331. BARNES et al. v. TURNER.
(593 SE2d 9)

ANDREWS, Presiding Judge.
William Barnes, Jr. (Barnes) and his company, William Barnes' Quality Auto Parts, Inc., appeal from the trial court's dismissal, based on the statute of limitation, of their complaint alleging legal malpractice against David Turner, Jr. (Turner).

This Court conducts a de novo review of the trial court's dismissal of plaintiffs' complaint, construing the allegations of the complaint most favorably to plaintiffs. *Anderson v. Flake*, 267 Ga. 498, 501 (480 SE2d 10) (1997); *Nicholson v. Windham*, 257 Ga. App. 429, 430 (571 SE2d 466) (2002).

So viewed, the complaint alleges that Turner represented Barnes and his company over a number of years in different business and financial transactions and that Barnes considered Turner to be his regular attorney when he needed legal services.

On October 1, 1996, Barnes sold his business to James and Rhonda Lipp. Turner prepared the sales agreement, lease agree-

ment, promissory note, and UCC-1 and UCC-2 financing statements involved in the transaction. The Lipps bought the business and inventory of William Barnes' Quality Auto Parts, Inc. and leased the premises of the business from Barnes. Barnes financed $180,000 of the purchase price which was to be repaid over a period of more than ten years. The UCC-1, the security instrument for the sale of personal property and assets other than real estate, listed as collateral for the promissory note "all equipment, fixtures, inventory, accounts receivable, instruments, documents, chattel papers, and other rights to payment, and general intangibles of [the Lipps]." Turner filed the UCC-1 and UCC-2 financing statements, signed by the Lipps, in Meriwether County on October 30, 1996.

Georgia law requires that, in order to be effective beyond five years, these UCC forms must be renewed. The continuation statements "may be filed only within six months before the expiration of the five-year period. . . ." OCGA § 11-9-515 (c). The recorded forms were returned to Turner and remained in his file until December 2001. No continuation statements were filed within six months of their expiration on October 30, 2001. The Lipps made the November and December 2001 payments in December, and then defaulted on their loan, leaving a principal balance due of $142,792. Unknown to Barnes, sometime before January 29, 2001, the Lipps had obtained a line of credit loan from F & M Bank & Trust Company and executed a UCC-1 form giving the bank a security interest in the same property listed on that given to Barnes. This UCC-1 form was filed in Meriwether County on December 28, 1998. The Lipps also refinanced the auto parts business with Mid-State Automotive Distributors, Inc. on January 29, 2001, giving that company another UCC-1 form listing the same collateral. This form was filed in Meriwether County on January 29, 2001, listing as the debtor Ronnie Lipp, Inc. instead of the individual Lipps. Apparently, the Lipps had transferred all the assets purchased from Barnes to the corporation. James Lipp has filed for bankruptcy under Chapter 7 and listed Barnes as an unsecured creditor.

Barnes sued Turner on October 18, 2002, claiming that he committed legal malpractice by failing to renew the UCC forms or to inform Barnes that they had to be renewed.[1]

Barnes acknowledges that the statute of limitation for legal malpractice actions is four years and runs from the date of the alleged incident of malpractice. See OCGA § 9-3-25; *Hunter, Maclean, Exley & Dunn v. Frame*, 269 Ga. 844, 845 (507 SE2d 411) (1998); *Gibson v.*

---

[1] The complaint originally contended that Turner negligently drafted the UCC financing statements by failing to include after acquired inventory as collateral. This claim was withdrawn, however.

*Casto*, 233 Ga. App. 403, 404 (2) (504 SE2d 705) (1998), modified on other grounds, 271 Ga. 667 (523 SE2d 564) (1999). Relying on *Colormatch Exteriors v. Hickey*, 275 Ga. 249, 251 (569 SE2d 495) (2002), and *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (273 SE2d 16) (1980), Barnes contends that, until he actually incurred damages, no cause of action existed, and this did not occur until the UCC continuation statements had not been filed during the six months prior to October 30, 2001, within which the UCC continuation statements could have been filed.

*Colormatch*, supra, dealt with product liability and other tort claims and the issue of substantial completion. It is, therefore, distinguishable from this legal malpractice action sounding in contract. See *Plumlee v. Davis*, 221 Ga. App. 848, 851 (2) (473 SE2d 510) (1996) (a cause of action for legal malpractice, alleging negligence or unskillfulness, sounds in contract).

Barnes relies on *Jankowski*, supra, for his argument that damages must be accrued before there is a cause of action for legal malpractice. In *Jankowski*, there was only a three-justice plurality, with one justice concurring in the judgment only, and three dissenting justices. See Supreme Court Rule 58. Nor does the plurality stand for the proposition that appreciable damages must accrue before a legal malpractice cause of action exists.

As stated in *Hunter, Maclean, Exley & Dunn*, supra at 845, a case involving alleged malpractice during the sale of a business, "[u]nder normal circumstances, the statute of limitations for legal malpractice actions runs from the date of the alleged incident of malpractice. [*Jankowski*, supra.] Hence, the four-year statute of limitation for the . . . malpractice claim . . . normally would have expired . . . four years after the transaction's closing." This reading of *Jankowski* is also supported by Supreme Court authority relied upon in the *Jankowski* plurality. As explained in *Jones, Day, Reavis & Pogue v. American Envirecycle*, 217 Ga. App. 80, 81-82 (1) (456 SE2d 264) (1995),

> [a] cause of action for legal malpractice may, depending on the circumstances, be either an action ex delicto or an action ex contractu. See generally *Hamilton v. Powell, Goldstein &c.*, 167 Ga. App. 411 (1) (306 SE2d 340) [(1983)], aff'd 252 Ga. 149 (311 SE2d 818) [(1984)]. When legal malpractice is grounded in an ex contractu cause of action, *the four-year statute of limitation "commences to run 'from the date of the breach of duty (imposed by the attorney-client contract), and not from the time when the extent of the resulting injury is ascertained.'" Frates v. Sutherland, Asbill & Brennan*, 164 Ga. App. 243, 244 (1) (296 SE2d 788) [(1982)]. Certain cases

indicate that when the action is grounded ex delicto, then damages as well as breach of duty must occur to give rise to a cause of action (arguably commencing the running of only the two-year statute of limitation of OCGA § 9-3-33; *Hamilton*, supra at 414). See, e.g., *Jankowski v. Taylor, Bishop & Lee*, [supra at 805 (1)]; *Ekern v. Westmoreland*, 181 Ga. App. 741, 742 (353 SE2d 571) [(1987)] ("Georgia recognizes the accrual of a right of action for a *tort* where there is a violation of a specific duty accompanied with damage." (Emphasis supplied.)) However, in *Jankowski*, supra at 806 (1), the Supreme Court concluded the holdings in *Gould v. Palmer & Read*, 96 Ga. 798 (22 SE 583) [(1898)], *Lilly v. Boyd*, 72 Ga. 83 [(1883)], and *Crawford v. Gaulden*, 33 Ga. 173 [(1862)], that "a right of action (for legal malpractice) arises immediately upon the wrongful act having been committed, even though there are no special damages(,)" were not in conflict with the basic rule as to when a cause of action in tort accrues. "*Jankowski* recognizes the validity of these older cases and holds . . . that since nominal damages arise upon the commission of the wrongful act, such nominal damages are sufficient as a triggering device for the statute of limitation and thus the cause of action then arises." *Hamilton*, supra at 414-415 (1). As a breach of contract would occur upon the commission of the wrongful act violating the contractual duty, a cause of action ex contractu, like a cause of action ex delicto, arises and the statute of limitation for legal malpractice is triggered immediately upon the commission of the wrongful act. See *Hamilton*, supra. Compare *Loftin v. Brown*, 179 Ga. App. 337 (1) (346 SE2d 114) [(1986),] with *Royal v. Harrington*, [194 Ga. App. 457, 458 (390 SE2d 668) (1990)].

(Emphasis supplied.) See also, e.g., *Douglas Kohoutek, Ltd. v. Hartley, Rowe & Fowler, P.C.*, 247 Ga. App. 422, 423 (1) (543 SE2d 406) (2000); *Denson v. Maloy*, 239 Ga. App. 778, 779 (1) (521 SE2d 666) (1999); *Long v. Wallace*, 214 Ga. App. 466, 467 (2) (448 SE2d 229) (1994).

Barnes also contends that, because his representation by Turner continued following the closing of the sale to the Lipps, he had an ongoing duty to remind Barnes with regard to the UCC-1 continuation statements. The mere existence of continuing representation, however, does not toll the statute of limitation regarding the original

breach of duty.[2] *Hunter, Maclean, Exley & Dunn,* supra at 849 (1); see *Douglas Kohoutek, Ltd.,* supra at 424-425 (1).

To the degree the argument made is that the continuing tort theory applies because of the alleged continuing duty of Turner during the five years to advise Barnes regarding continuation of the UCC-1, that theory applies only to cases involving personal injury. *Corp. of Mercer Univ. v. Nat. Gypsum Co.,* 258 Ga. 365, 366 (1), (2) (368 SE2d 732) (1988). Regarding legal malpractice, a subsequent act by which the attorney could have avoided the ultimate effect of the original breach of duty does not inflict new harm which would begin the statute of limitation again. *Green v. White,* 229 Ga. App. 776, 778 (1) (a) (494 SE2d 681) (1997); *Stocks v. Glover,* 220 Ga. App. 557, 558 (1) (469 SE2d 677) (1996).

The changes in these principles urged by Barnes are within the purview of the legislature or the Supreme Court, not this Court.

There was no error in the trial court's dismissal of Barnes' complaint.

*Judgment affirmed. Adams, J., concurs. Barnes, J., concurs in the judgment only.*

DECIDED DECEMBER 4, 2003 —
RECONSIDERATION DENIED DECEMBER 29, 2003

*Jones, Jensen & Harris, Taylor W. Jones, Richard E. Harris,* for appellants.

*Carlock, Copeland, Semler & Stair, John C. Rogers, Johannes S. Kingma,* for appellee.

---

[2] There is no allegation here of fraud by Turner which would toll the statute. *Hunter, Maclean, Exley & Dunn,* supra.